

FILED
2023 Dec-07  PM 01:22
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

**AUDREY MARIE DOTSON**, *in her personal capacity and in her capacity as the personal representative of the Estate of Brandon Clay Dotson,* and **AUDREY SOUTH**, *in her personal capacity and in her capacity as the personal representative of the Estate of Brandon Clay Dotson (AIS: 209140)*

     *Plaintiffs,*

**v.**

**ALABAMA DEPARTMENT OF CORRECTIONS, JOHN Q. HAMM,** *in his individual and official capacities,* **GREG LOVELACE,** *in his individual capacity,* **KAREN WILLIAMS,** *in her individual capacity,* **FICTITIOUS DEFENDANT A,** *the ADOC Division Director responsible for the operation of Ventress Correctional Facility, in their individual capacity,* **SUPERVISING OFFICERS 1-10,** *in their individual capacities,* **CORRECTIONAL OFFICERS 1-10,** *in their individual capacities,* **CHS AL, LLC d/b/a YESCARE, YESCARE MEDICAL STAFF 1-10,** *in their individual capacities,* **ALABAMA DEPARTMENT OF FORENSIC SCIENCES, ANGELO DELLA MANNA,** *in his individual and official capacities,* **UNIVERSITY OF ALABAMA SYSTEM, UNIVERSITY OF ALABAMA HEALTH SERVICES FOUNDATION, P.C., UNIVERSITY OF ALABAMA AT BIRMINGHAM HEERSINK SCHOOL OF MEDICINE, UNIVERSITY OF ALABAMA AT BIRMINGHAM HEALTH SYSTEM,** and **UAB DEFENDANTS 1-20.**

     *Defendants.*

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO.: _____
**JURY TRIAL DEMANDED**



*The deceased, Brandon Clay Dotson*

"Death is unique. It is unlike aught else in its certainty and its incidents. A corpse in some respects is the strangest thing on earth. A man who but yesterday breathed, and thought, and walked among us has passed away. Something has gone. The body is left still and cold, and is all that is visible to mortal eye of the man we knew. Around it cling love and memory. Beyond it may reach hope. It must be laid away. And the law—that rule of action which touches all human things—must touch also this thing of death."

Louisville & N.R. Co. v. Wilson, 123 Ga. 62, 63, 51 S.E. 24 (1905).

## **COMPLAINT**

COMES NOW, Plaintiffs Audrey South and Audrey Dotson, in their personal capacity, and as personal representative of the Estate of Brandon Dotson (the "Plaintiffs"), and respectfully file this Complaint and allege the following:

### **INTRODUCTION**

Brandon Clay Dotson was found dead in Ventress Correctional Facility on or around November 16, 2023 – the same day he was considered for parole release. Although he was not sentenced to die by an Alabama court, Mr. Dotson's sentence to the custody of the ADOC for a

period of incarceration was tantamount to a death sentence. Mr. Dotson was a forty-three-year-old father.

After his family was alerted to his death by Defendant Warden Karen Williams, Mr. Dotson's mother, daughter and brother spent days attempting to claim his body, in hopes of holding his funeral before Thanksgiving Day. For days the family attempted to claim his body after submitting the proper paperwork as soon as they were alerted to his untimely death. Finally, his body was released to his family nearly a week later on November 21, 2023. At this point the body had not been properly stored and was severely decomposed. Despite the family's initial wishes, they had no choice but to hold a closed casket funeral service.

Plaintiffs suspected foul play, in part because of the Alabama Department of Corrections' extensive and ongoing violations of basic human and constitutional rights, so they retained Dr. Boris Datnow, an autopsy pathologist, to conduct a second autopsy of Mr. Dotson's body. Upon conducting the autopsy, Dr. Datnow discovered that the heart was missing from the chest cavity of Mr Dotson's body. **The Alabama Department of Corrections – or an agent responsible for conducting the autopsy or transporting the body to his family – had, inexplicably and without the required permission from Mr. Dotson's next of kin, removed and retained Mr. Dotson's heart.**

First, Plaintiffs seek the immediate return of Mr. Dotson's heart (and any other remains retained by Defendants) to the family so that it may be examined by an autopsy pathologist and then properly cremated or interred.

Plaintiffs also seek the relief described herein to hold Defendant's accountable for wrongful death, violation of constitutional rights, fraud, negligence, conversion, trespass to

chattel, interference with the right of burial or disposition of the deceased, willful interference with remains, intentional and negligent mishandling of a corpse, intentional and negligent infliction of emotional distress, outrage and unjust enrichment. Plaintiffs were a grieving family searching for answers in the wake of Brandon Dotson's untimely death.

The loss of a loved one is one of the most intimate and personal experiences in our lives. We cope with death with rituals that allow us to say our final farewells to loved ones with honor and respect. Usually, the most powerful aspects of these rituals involve what we do with the decedent's remains. Respect for the dead and sympathy for a family mourning a loss are some of the few things that unite us all. Also uniting us is the overwhelming sense of outrage we feel when we learn of unimaginable neglect in the handling of remains, sometimes involving deliberate fraud and the worst forms of human greed. Defendant's overall mistreatment of Mr. Dotson's body and the Dotson family amounts to outrageous conduct that needlessly and recklessly intensified the family's emotional distress.

This is a civil action brought by Plaintiffs, individually and as the personal representatives of the Estate of Brandon Clay Dotson, against the ADOC, the ADOC Commissioner, ADOC supervisory personnel and corrections officers who established and/or maintained the ADOC administrative machinery that permitted, encouraged, allowed, and/or were otherwise indifferent to the conditions that lead to, resulted in, and caused the death of Mr. Dotson on or around November 16, 2023, in violation of Mr. Dotson's constitutional rights.

This is also a civil action against all Defendants for engaging in the illegal, reprehensible and outrageous conduct of retaining organs and tissues from incarcerated

individuals who die in state custody without the consent of their family, next of kin, or representatives, as required by law.  The dozens of individuals across the Alabama Department of Corrections,  the Alabama Department of Forensic Sciences and the University of Alabama System who knew or should have known of this repugnant practice must be held accountable for disrespecting, misleading, and exploiting a grieving family at their most vulnerable moment.

## JURISDICTION AND VENUE

1.      This action arises under the Fourth and Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983. The Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).

2.      This judicial district is an appropriate venue under 28 U.S.C. § 1391(b)(1) because some of the Defendants are residents of and/or situated in Jefferson County, Alabama, which is located in the Southern Division of the Middle District of Alabama.

3.      The Court has supplemental jurisdiction over the pendent state law claim pursuant to 28 U.S.C. § 1367(a).

## PARTIES

4.      Plaintiff Audrey South is of legal age and a citizen and resident of the state of Alabama.

5.      Plaintiff Audrey Marie Dotson is of legal age and a citizen and resident of the state of Alabama. As next of kin, she is the representative of the estate of her father, Brandon Clay Dotson.

6.      The Plaintiffs are seeking damages as the representative of Mr. Dotson's estate to remedy the violations of his rights secured by the United States Constitution and the laws of the

state of Alabama, to punish the Defendants for their wrongdoing, and to deter similar wrongful conduct from occurring in the future. The decedent, Mr. Dotson, was originally from Lawrence County, Alabama, and is survived by his daughter, Audrey Dotson. Mr. Dotson was forty-three (43) years old at the time of his death.

7.      Defendant Alabama Department of Corrections ("ADOC") is an administrative department of the state of Alabama, established by law, and is responsible for administering and exercising the direct and effective control over penal and corrections institutions throughout this state, including Ventress Correctional Facility. Defendant ADOC is based in Montgomery County, Alabama.

8.      Defendant John Q. Hamm was the Commissioner over ADOC at all relevant times. Defendant Hamm is responsible for exercising the authority, functions, and duties of the Commissioner of the ADOC including the appointment of personnel and employees within the ADOC required for the performance of the ADOC's duties towards the prisoners it incarcerates. Those duties include operating a prison system that respects the constitutional and human rights of persons within the custody of the ADOC, including the rights belonging to Mr. Dotson while he was a prisoner at Ventress Correctional Facility.

9.      Defendant Greg Lovelace was the Chief Deputy Commissioner of Corrections over ADOC at all relevant times.

10.     Defendant Karen Williams was the Warden at Ventress Correctional Facility at all relevant times.

11.     Fictitious Defendant A was the regional director with supervisory authority over correctional facilities in the region which included Ventress Correctional Facility, at all relevant

times.

12.     Defendant Supervisory Officers 1 through 10 had supervisory duties at Ventress Correctional Facility in Clayton, Alabama at all relevant times.

13.     Defendant Correctional Officers 1 through 10 were on duty at Ventress Correctional Facility in Clayton, Alabama at all relevant times.

14.     Defendant CHS AL, LLC d/b/a YesCare is the third party medical provider on duty at Ventress Correctional Facility in Clayton, Alabama at all relevant times.

15.     Defendants YesCare Medical Staff 1-10 were tasked with providing medical care and life-saving treatment at Ventress Correctional Facility in Clayton, Alabama at all relevant times.

16.     Defendant Alabama Department of Forensic Sciences ("ADFS") is an administrative department of the state of Alabama, established by law, and is responsible for conducting autopsies when a person dies in ADOC custody. ADFS's mission is "the application of science and medicine to the purposes of Justice." Defendant ADOC is based in Lee County, Alabama.

17.     Defendant Angelo Dello Manna was the Director of ADFS at all relevant times.

18.     The aforementioned Defendants were all acting under color of State law at the time of the events described in this Complaint.

19.     Defendant University of Alabama System ("System"), established by the Alabama Constitution, is a public university system in Alabama that coordinates and oversees three research universities, including University of Alabama at Birmingham. Rules, policies, and procedures are promulgated by the System to ensure that the necessary flow of information for

accountability takes place concerning the research universities' policies; mission, role, and scope of each campus; and the ultimate responsibility to the public and political bodies of Alabama. Defendant System is based in Tuscaloosa County, Alabama.

20.     Defendant University of Alabama Health Services Foundation, P.C. ("UAHSF") is a 501(c)(3) public charity based in Jefferson County, Alabama. UAHSF plays a vital role in delivering care within UAB's academic medical center. UAHSF shares responsibility with ADFS in conducting autopsies when a person dies in ADOC custody.

21.     Defendant University of Alabama at Birmingham Heersink School of Medicine (UABSOM), a facility operated by UAHSF, is a public university based in Jefferson County, Alabama. UABSOM provides training and education to medical students, including by facilitating laboratory exercises involving human organs and tissues.

22.     Defendants UAB Defendants 1-20 knew or should have known that entities they were employed by within the System were receiving organs and tissues from individuals who had died in prison custody without the consent of their family members, representatives, or next of kin.

23.     At this time, the true and correct names of the Fictitious and Unnamed Defendants are unknown to the Plaintiffs, but will be added by amendment when ascertained.

### STATEMENT OF FACTS

*Circumstances of Brandon Dotson's Death*

24.     Plaintiffs were informed and believe that in the days leading up to Mr. Dotson's death, Mr. Dotson had been in segregated housing asking for help, as he was the target of violence by another incarcerated individual. Defendants Supervisory Officers and Correctional

Officers ignored Mr Dotson's pleas for help and instead returned him to general population, where he could access drugs and be attacked easily by those seeking to harm and exploit him.

25.     Upon information and belief, Mr. Dotson was forced to vacate his assigned bed by an incarcerated man who was regularly providing Mr Dotson with drugs, and punishing him when he failed to pay his debt for those drugs.

26.     Defendants Supervisory and Correctional Officers at Ventress Correctional Facility were aware of Mr. Dotson's concerns for his safety, yet did nothing to prevent the harm that came to him in the week leading up to his death on November 16, 2023.

27.     At the time of Mr. Dotson's death, the dormitory in which he was housed was grossly understaffed and severely overcrowded. Defendant Warden Williams and the other administrative and corrections staff at Ventress Correctional Facility had notice of the prison's chronic understaffing of correctional officers and overcrowding of incarcerated people.

28.     No member in the correctional staff was available to prevent the abuse Mr. Dotson endured and the constant and unlimited access to drugs that he had, or to rescue Mr. Dotson timely to save his life, or if they were available, they ignored the warning signs and direct pleas for help when they had every opportunity to intervene and prevent the death of Mr. Dotson.

29.     The administrative and correction staff Defendants were deliberately indifferent in responding to the known security, safety hazards and Eighth Amendment violations at Ventress Correctional Facility, even as the level of drug use and violence has escalated.

30.     Defendants' actions and inactions proximately caused Mr. Dotson's death, in violation of his Eighth Amendment rights not to suffer cruel and undue punishment while

incarcerated. The Plaintiffs seek punitive damages from the named Defendants for Mr. Dotson's death due to their deliberate indifference to his health and safety, and failure to protect him from harm while incarcerated at Ventress Correctional Facility.

31.     Upon information and belief, Mr. Dotson was found dead in his bed. At the time he was found deceased, his body had already begun to stiffen. The exact time of his death is unknown.

32.     Defendants CHS AL, LLC and YesCare Medical Staff, herein referred to as "the medical staff" delayed, denied, and/or were deliberately indifferent to Mr. Dotson's serious medical needs, and by failing to immediately provide or otherwise obtain immediate emergency medical treatment, and as a result, Mr. Dotson could not be saved.

### ADOC Conditions of Confinement

33.     The 2022 calendar year was the deadliest in the Alabama Department of Corrections' history, with 2023 on pace to have a similar death rate. Within the 2022 calendar year, over 260 incarcerated individuals died while in ADOC custody. As a point of comparison, f\rom February 2015 through November 2015, only seven (7) people were killed in the Alabama state prison system, which at the time was considered quite high.

34.     Defendant Hamm has repeatedly acknowledged that the ADOC faces violent consequences from prison overcrowding and understaffing.

35.     The Alabama Department of Corrections lists "To ensure safe, humane and constitutional conditions of incarceration in all facilities," including Ventress Correctional Facility, as one of its Department priorities.

36.     In its Annual Report, the Alabama Department of Corrections also states, in its

Department Values: "We value a safe, secure and rehabilitative environment for the inmate population."

37.     Despite these professed values in its own policy statements and acknowledgement of violent consequences due to overcrowding and understaffing, violence that seemingly spiked in 2022 has continued unabated throughout ADOC prisons.

38.     On October 6, 2016, the United States Department of Justice announced that it had opened a Civil Rights of Institutionalized Persons Act ("CRIPA") investigation into Alabama's male prisons, including Ventress Correctional Facility.

39.     Defendant Hamm had been briefed about overcrowding, correctional understaffing, and ongoing violence and threats of violence and drug overdoses at Ventress Correctional Facility in the months and years leading up to Mr. Dotson's death. Despite his knowledge of substantial risks of serious harm to prisoners at Ventress Correctional Facility, Defendant Hamm failed to act to prevent prisoners at Ventress Correctional Facility, including Mr. Dotson, from suffering injury and death.

40.     Defendants Lovelace, Williams, Supervisory Officers and Correctional Officers had been briefed about overcrowding, correctional understaffing, and ongoing violence and drug access at Ventress Correctional Facility in the months leading up to Mr. Dotson's death. Despite their knowledge of substantial risks of serious harm to prisoners at Ventress Correctional Facility, Defendants failed to act to prevent prisoners at Ventress Correctional Facility, including Mr. Dotson, from suffering injury and death.

41.     In June of 2017, the United States District Court found that "ADOC facilities are significantly and chronically overcrowded." Braggs v. Dunn, 257 F. Supp. 3d 1171, 1193 (M.D.

Ala. 2017). The court further noted that "The combination of overcrowding and understaffing leads to an increased level of violence, both because of the difficulty of diffusing tension and violence in an overcrowded open-dormitory setting, and because of the lack of supervision by correctional officers." Braggs, 257 F. Supp. 3d at 1200.

42.     Former ADOC Commissioner Jefferson Dunn, in sworn testimony in the United States District Court for the Middle District Of Alabama "aptly described the prison system as wrestling with a 'twoheaded monster': overcrowding and understaffing." Braggs, 257 F. Supp. 3d at 1184.

43.     On April 2, 2019 the U. S. Department of Justice Civil Rights Division Released the results of their investigation into Alabama Department of Corrections, followed by a second report detailing additional findings of unconstitutional conditions.

44.     In December 2021, the DOJ filed a lawsuit against ADOC.

45.     According to Defendant ADOC's website, "Ventress has a primary mission of providing alcohol and drug treatment to ADOC's inmate population."

46.     Prisoners at Ventress Correctional Facility are often double-bunked, the officers' lines of sight inside the dormitories are limited, and this combination can lead to a higher risk of drug use and violent activity.

47.     In addition to the overcrowding and understaffing, the violence and drug use at Elmore Correctional Facility perpetuates year after year because its correctional officers continue to lack training and supervision needed to turn the tide of unrelenting violence inside prison walls.

48.     At all times material to this action, the ADOC Defendants knew of the

prevalence of contraband weapons and drugs, uncontrolled movement of inmates, the understaffing, and overcrowding at Ventress Correctional Facility, and knew that they needed to take steps to prevent the flow of contraband, control movement, reduce overcrowding or ensure adequate staffing in order to prevent further murders and assaults, but failed to do so.

### Treatment of Mr. Dotson's Family

49.     Ventress's Warden Defendant Williams called Mr. Dotson's brother Robert Dotson the evening of his death, as Mr. Dotson had listed him as his next of kin upon being committed to the ADOC. Robert Dotson received this call at approximately 5:40 p.m.

50.     Defendant Williams informed Robert that his brother was found dead in his bed. Robert asked Defendant Williams whether Mr. Dotson had been beaten to death. Defendant Williams responded abruptly, asking why everyone thinks that a prison death is always caused by a beating.

51.     Defendant Williams asked Robert if his family intended to claim the body. Robert responded affirmatively, that they would claim the body. Defendant Williams expressed surprise, commenting that many families did not have the financial resources to claim the body and that, as a result, sometimes the wardens did not contact the families at all when a death occurred.

52.     Robert informed defendant Williams that their mother, Plaintiff Audrey South, would be making decisions regarding the collection of Mr. Dotson's remains. Defendant Williams told Robert that she would call Plaintiff South in the morning, but when Plaintiff South got word of this, she immediately called Defendant Williams herself to get more information regarding her son's death. Within hours, Plaintiff South provided the paperwork that ADOC needed to allow the family to claim the body.

53.     Defendant Williams told Plaintiff South that ADOC was required to perform an autopsy, when Plaintiff South expressed her desire for ADOC not to touch the body at all.

54.     Defendant ADOC took approximately five (5) days to complete an autopsy and transfer Mr. Dotson's body to Plaintiffs.

***Condition of Mr. Dotson's Body***

55.     On November 21, Plaintiffs gained possession of Mr. Dotson's body and immediately hired a board certified pathologist, Dr. Boris Datnow, to conduct a second autopsy.

56.     Plaintiffs were informed by Dr. Datnow that Mr. Dotson's heart had been removed from his body when it was turned over to him from the state of Alabama.

57.     The ADOC, ADFS, UAB Systems, or one of their agents was or should have been in sole possession of the body of Mr. Dotson after his death until it was claimed by Plaintiffs.

58.     At some point while Mr. Dotson's body was in the sole control of Defendants or their agents, Mr. Dotson's heart was removed from his body and retained by Defendants or their agents.

59.     When Plaintiffs finally had access to Mr Dotson's body at the funeral home, the funeral director informed them that the body was highly decomposed when it arrived. Based on his years of experience accepting corpses, the funeral director determined that the decomposition indicated that the body had not been properly stored while in the possession of the state.

60.     Upon opening the casket, the family members saw bruising on the back of Mr Dotson's neck and excessive swelling across his head. The stench of his body was

overwhelming. As a result, the family decided to have a closed casket funeral.

61.     Without the benefit of a hearing or discovery, Plaintiffs are not aware of which entities had possession of Mr. Dotson's body and for how long.

62.     To date, no one has explained to the family why Mr. Dotson's heart was missing when his body was turned over to them. Plaintiffs do not know where Mr Dotson's heart currently is, or in whose possession.

***UAB History of Using Specimens from Incarcerated People***

63.     In 2018, a group of medical students at University of Alabama at Birmingham School of Medicine ("UABSOM") noticed that a disproportionate number of the specimens they encountered during their medical training originated from individuals who had died in prison custody within the Alabama Department of Corrections. These students ("UABSOM Students") began conducting their own research into this anomaly.

64.     The UABSOM Students gathered the following facts:

a.     The UAB Division of Autopsy is contracted by the Department of Corrections to perform autopsies on incarcerated individuals who die in state custody. Each autopsy request is initiated by a warden. As documented through UAB Division of Autopsy publications, from 2006 to 2015, per the Division of Autopsy' 2017 publication, 23% of their yearly income comes from Department of Corrections autopsies, and 29% comes from Alabama Dept of Forensic Science.

*Am J Forensic Med Pathol* • Volume 38, Number 3, September 2017



**FIGURE 2.** Proportion of income generated from each contract (2006–2015).

b. Wardens can limit the autopsy to a strict determination of death, with no tissues retained for research or education. However, according to a UABSOM doctor, wardens always sign "no limitations" on the form which initiates the request for autopsy. Neither the patient, nor their family, has consented to the retention of tissues for teaching, education, or research.

c. A percentage of teaching samples used in UABSOM's preclinical pathology education have been obtained without consent.

d. Between 15% and 69% of incarcerated persons have a persistent medical problem not examined by medical personnel. Between 21% and 36% are not receiving prescriptions for current medical needs.

e. The incarcerated population have inconsistent healthcare access constrained by,

among other factors: $12-$100 copays, while making No money for their labor or mere cents per hour.

f.   The Mission Statement of UABSOM is "[t]o improve the health and well-being of society, particularly the citizens of Alabama, by providing innovative health services of exceptional value that are patient- and family-centered, a superior environment for the education of health professionals, and support for research that advances medical science."

g.   Because of the involuntary nature of their confinement, prisoners are more vulnerable to coercion regarding their consent to participate in research, thus it is important to make the process as voluntary as possible.

h.   A disproportionate amount of pathology lab specimens used for teaching purposes are from incarcerated individuals because they have the most advanced pathology (i.e. it is easier to study a 3 cm tumor than a 3 mm tumor). Additionally, there have already been abstracts written by UAB Pathology regarding misdiagnosis rates at UAB Hospital versus the ADOC, including organs from incarcerated individuals.

i.   The pathology lab has a private contract to perform autopsies for the DOC, then uses these specimens for both research and teaching, but is in no way advocating for a change in health care access or quality received from the DOC.

65.   On September 20th, 2018, the UABSOM Students met with the UABSOM Ethics Oversight Committee ("Ethics Committee") to present their findings. During this meeting, the majority of the Ethics Committee members took the position that organs removed from a

cadaver's body during autopsy are used for the secondary purposes of teaching future physicians and thereby benefits future patients. If such uses are disallowed, these specimens would only be disposed of, serving no useful purpose. Thus, it was a position of the ethics committee that the autopsy process and the teaching uses of specimens obtained through the autopsy on incarcerated individuals in the current fashion would be ethically permissible.

66.     The Ethics Committee acknowledged that it is true that in private autopsy the next of kin (usually family members) has the option to opt out of the retention and teaching uses of a deceased person's organs following autopsy.

67.     The UABSOM Students documented that they felt frustration at the lack of response from the Ethics Committee. They pursued meetings with other administrators and asked administrators to implement the following policies:

a.   Any organs obtained with consent given only by a warden/entity of the state shall be removed from the education collection.

b.   Until a process is created to obtain informed consent from incarcerated people or their true next of kin, their organs will not be used for educational or research purposes.

c.   Language should be included to minimize potential coercion of organ donation by prisoners and offer the right to withdraw without penalty. Examples from the University of Virginia Institutional Review Board recommendations:

i.   "Your information will not be shared with the parole board or the prison staff. Your participation will be kept private and will not affect your parole review" and "If you decide to withdraw from the study, this

information will not be shared with the parole board or with prison staff"

68.     On November 26, 2018, the UABSOM Students brought their unaddressed concerns to the administration in a formal meeting. They alerted the administration that the Ethics Committee meeting was unproductive. The UABSOM Students commented that no Ethics Committee member presented outside research,  prompting concern that the Ethics Committee did not do their due diligence regarding the issue. In addition, students noted that data from the Autopsy Department was provided by members of the Autopsy Department and was not double checked by the Ethics Committee. Furthermore, students reported that they were accused of being "inflammatory" and comparing their educators to "criminals."

69.     During this November 26th meeting, the UABSOM Students also alerted the administration to the fact that the autopsy lab responded to the student concerns by stating that they are no longer including incarceration status in patient vignettes because of the students ethical concerns, as had been done before they raised their ethical concerns. The students commented that refusing to provide information about the source of the tissues they encountered in the autopsy lab rendered them unable to make an informed decision about their participation in such practices.

70.     An administrator admitted that 1/3 of the samples in the pulmonary lab are from incarcerated individuals. Based on this admission and other information, the UABSOM Students concluded that incarcerated people are 50 times more likely to represent teaching samples than non-incarcerated individuals.

71.     On February 18th, 2019, the UABSOM Students again met with administrators. An administrator stated that solid organ autopsy specimens from incarcerated persons would no

longer be utilized in UABSOM *undergraduate* medical education. This administrator informed the students that specimens would remain in the Pathology Department but would not be used to teach students. Another administrator stated that the Pathology Department has been asked to obtain consent for future specimens. Students documented, however, that no measures were taken or, to their knowledge, have been taken to enforce this action in any way.

72.     Upon information and belief, UABSOM is a possible intended recipient of Mr. Dotson's heart.

## ATTORNEYS' FEES

73.     In order to prosecute the causes of action alleged herein, the Plaintiff retained the undersigned attorneys to litigate the claims in this case. The Plaintiff is entitled to recover reasonable attorneys' fees and costs. See 42 U.S.C. § 1988.

## <u>COUNT I</u>

**Eighth and Fourteenth Amendment Violations and 42 U.S.C. § 1983**

***(Against Defendants Alabama Department of Corrections, John Q. Hamm, Greg Lovelace, Karen Williams, Fictitious Defendant A, Supervising Officers 1-10, Correctional Officers 1-10, CHS AL, LLC d/b/a YesCare, and YesCare Medical Staff 1-10)***

74.     The Plaintiffs adopt and incorporate by reference each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

75.     Named Defendants' policies, practices, acts, and omissions placed Mr. Dotson at an unreasonable and foreseeable risk of serious injury and death.

76.     The Eighth Amendment imposes a duty upon prison officials to protect prisoners from violence at the hands of other prisoners and access to illicit drugs.

77.     Defendants breached these duties and were deliberately indifferent to Mr. Dotson's safety, well being, and health

78.     Defendants acted with deliberate indifference to the safety of Mr. Dotson while he was incarcerated at Ventress Correctional Facility. As a consequence, Mr. Dotson was incarcerated under conditions posing a substantial risk of violations to his Eighth Amendment right against cruel and unusual punishment, which ultimately caused his death.

79.     Defendants' policies, practices, acts, and omissions constituted deliberate indifference to a serious risk of harm to Mr. Dotson and constitute clearly-established violations of the Cruel and Unusual Punishments Clause of the Eighth Amendment, made applicable to the States through the Fourteenth Amendment to the United States Constitution. As a proximate result of Defendants' illegal and unconstitutional acts and omissions, Mr. Dotson experienced grave physical, emotional, and psychological injury and pain; and died.

80.     The Defendants' above-described actions were deliberate and in reckless disregard of the constitutional rights of Mr. Dotson. Defendants' conduct warrants an award of punitive damages in an amount to be determined at trial.

81.     Punitive damages are necessary to deter future Eighth Amendment violations by these Defendants and at Ventress Correctional Facility.

## COUNT II

**42 U.S.C. § 1983 – Deliberate Indifference to Serious Medical Needs**

*(Against Defendants Alabama Department of Corrections, John Q. Hamm, Greg Lovelace, Karen Williams, Fictitious Defendant A, Supervising Officers 1-10, Correctional Officers 1-10, CHS AL, LLC d/b/a YesCare, and YesCare Medical Staff 1-10)*

82.     The Plaintiffs adopt and incorporate by reference each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

83.     On or about November 16, 2023, Defendants and their agents acting under color of state law within the meaning prescribed by 42 U.S.C. § 1983, were deliberately indifferent to Mr.

84.     Dotson's serious medical needs in that they had knowledge of Mr. Dotson's serious medical need and condition requiring emergency medical treatment yet refused to obtain or authorize that treatment for Mr. Dotson by delaying or denying said treatment.

85.     The decisions of these individual defendants to deny Mr. Dotson medical care were pursuant to one or more policies or customs at the Ventress Correctional Facility which included inadequate correction officer training, allowing untrained and/or poorly trained corrections officers to make decisions regarding medical treatment, and denying and delaying necessary medical care to inmates with serious medical needs in order to avoid incurring charges for said medical treatment, overcrowded prison, and understaffed correction officer and medical staffs.

86.     As a result of these defendants deliberate indifference to Mr. Dotson's serious medical needs for emergency treatment Mr. Dotson experienced severe pain, suffering, and death thereby depriving Mr. Dotson of his clearly established rights as a prisoner under the Eighth and Fourteenth Amendments to the Constitution of the United States in violation of 42 U.S.C. § 1983.

87.     The delay and/or denial of emergency medical treatment to Mr. Dotson for the above-described serious medical need is directly attributable to one or more customs and/or

policies of the Defendants and/or violations of one or more customs and policies.

## COUNT III

### 42 U.S.C. § 1983 - Deliberate Indifference to Health and Safety, Failure to Prevent Harm

*(Against Defendants Alabama Department of Corrections, John Q. Hamm, Greg Lovelace, Karen Williams, Fictitious Defendant A, Supervising Officers 1-10, Correctional Officers 1-10, CHS AL, LLC d/b/a YesCare, and YesCare Medical Staff 1-10)*

88.     The Plaintiffs adopt and incorporate by reference each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

89.     Defendants and their administrative and correction officer staffs acting under color of law within the meaning of 42 U.S.C. § 1983, were deliberately indifferent to the potential harm to Mr. Dotson, failed to intervene, protect, and keep Mr. Dotson safe from harm, which ultimately resulted in Mr. Dotson's death. These Defendants did thereby deprive Mr. Dotson of his rights under the Eighth Amendment to the Constitution of the United States in violation of 42 U.S.C. § 1983.

90.     As a result of the conduct of defendants, Mr. Dotson died on November 16, 2023.

## Count IV

### 42 U.S.C. § 1983 - Conspiracy to Cover Up Deliberate Indifference to Serious Medical Needs and Health and Safety

*(Against Defendants Alabama Department of Corrections, John Q. Hamm, Greg Lovelace, Karen Williams, Fictitious Defendant A, Supervising Officers 1-10, Correctional Officers 1-10, CHS AL, LLC d/b/a YesCare, and YesCare Medical Staff 1-10)*

91.     The Plaintiffs adopt and incorporate by reference each and every allegation

contained in the preceding paragraphs of this Complaint as if fully set forth herein.

92.     Defendants conspired with each other to cover up the deliberate indifference to health and safety, failure to protect from harm, deliberate indifference to serious medical needs, medical negligence, the conversion of Mr. Dotson's heart without the required approval from his next of kin, and the mishandling of Mr. Dotson's corpse.

## COUNT V

### State Law Wrongful Death

### Ala. Code § 6-5-410

### Wrongful Death

*(Against Defendants Alabama Department of Corrections, John Q. Hamm, Greg Lovelace, Karen Williams, Fictitious Defendant A, Supervising Officers 1-10, Correctional Officers 1-10, CHS AL, LLC d/b/a YesCare, and YesCare Medical Staff 1-10)*

93.     The Plaintiffs adopt and incorporate by reference each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

94.     The death of Mr. Dotson was the direct and proximate result of Defendants' reckless and intentional failure to protect.

95.     Defendants' actions and failures to act proximately caused Mr. Dotson's death.

96.     Defendants' misconduct gives rise to a cause of action by Mr. Dotson's personal representative and renders Defendants liable for punitive damages under Alabama's wrongful death statute, Ala. Code § 6-5-410.

97.     Mr. Dotson could have commenced an action for these wrongful acts or failures to act if they had not caused his death.

98.     Defendants caused the wrongful death of Mr. Dotson as contemplated by Alabama Code § 6-5-410.

99.     Said defendants, separately and severally, owed a duty to Mr. Dotson to provide him with a standard of care of the degree of diligence and skill common in the community and applicable to prisoners such as Mr. Dotson.

100.    Defendants violated this duty of care, and violated their own policies and procedures, and in doing violated statutory their duty under Alabama and Federal law to attend to the needs of Mr. Dotson in the custody of the Ventress Correctional Facility.

## COUNT VI

### Equal Protection

#### *(Against All Defendants)*

101.    The Plaintiffs adopt and incorporate by reference each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

102.    Prison practices that single out inmates for dissection merely because they happen to die in prison lack the requisite rationality required by the equal protection clause.

## COUNT VII

### 42 U.S.C. § 1983 - Interference with the Right of Burial or Disposition of the Deceased

#### *(Against All Defendants)*

103.    The Plaintiffs adopt and incorporate by reference each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

104.    Defendants interfered with the right of burial or disposition of the deceased in violation of the Due Process Clause of the Fourteenth Amendment.

105.    Plaintiff is the duly appointed personal representative of the estate of the deceased, who was the Plaintiff's father.

106.    Following the deceased's death, Defendants interfered with Plaintiff's right to dispose of the deceased's remains in a timely manner by refusing to release the body to Plaintiff for burial, and turning over the body in a highly decomposed state with the heart missing.

107.    Defendants' interference with Plaintiff's right of burial or disposition of the deceased's remains constituted a violation of Plaintiff's due process rights under the Fourteenth Amendment.

108.    Although the deceased passed away before this complaint was filed, Plaintiff has standing to assert this due process claim as the personal representative of the deceased's estate.

109.    The claim survives the deceased's death under Alabama's wrongful death statute.

## COUNT VIII

**Intentional and Negligent Mishandling of a Corpse; Interference with Right of Sepulcher**

***(Against Defendants Alabama Department of Corrections, John Q. Hamm, Greg Lovelace, Karen Williams, Fictitious Defendant A, Supervising Officers 1-10, Correctional Officers 1-10, CHS AL, LLC d/b/a YesCare, and YesCare Medical Staff 1-10, Alabama Department Of Forensic Sciences, Angelo Della Manna)***

110.    Plaintiff is the personal representative of the deceased.

111.    Defendants returned the deceased's body to Plaintiff missing organs and in a highly decomposed state.

112.    Defendants' actions in mishandling the corpse constituted intentional infliction of emotional distress upon Plaintiff.

113.    Plaintiff had the right to receive the body in the same condition it was in at the time of death.

114.    By returning the body in a worse condition, Defendants intentionally mishandled the corpse and caused severe emotional distress to Plaintiff.

115.    Further, Defendants owed a duty of care to properly handle the deceased's body. By returning the body missing organs and in an advanced state of decomposition, Defendants breached this duty and were negligent in their handling of the corpse.

116.    As a direct and proximate result of Defendants' intentional and negligent actions, Plaintiff suffered emotional distress damages.

## COUNT IX

### Unjust Enrichment

#### *(Against All Defendants)*

117.    The Plaintiffs adopt and incorporate by reference each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

118.    Defendants' outrageous and inexcusable mishandling of the deceased's body amounts to a reprehensible violation of human dignity and common decency. Their depraved indifference in returning the body bereft of vital organs and in a revolting state of decay shows utter contempt for the deceased's memory and for the profound emotional distress wantonly inflicted upon the Plaintiff.

119.    No civilized society can tolerate such a barbaric desecration of the dead. That Defendants had the audacity to ransack the body and convert its parts for their own selfish gain only compounds the egregiousness of their conduct. Their brazen theft and exploitation of the

helpless deceased shocks the conscience.

120.    In callously mistreating the deceased's mortal remains, Defendants trampled on Plaintiff's sacred rights of sepulcher. Their appalling misconduct is nothing short of grave robbery and mutilation.

121.    Defendants retained various body parts, tissues, and organs from the deceased after death without seeking or obtaining permission from Plaintiff to do so.

122.    Defendants kept the body parts for purposes of research, study, and potential sale or profit.

123.    By retaining the body parts without consent, Defendants were unjustly enriched to Plaintiff's detriment.

124.    Although Defendants may have had lawful initial custody of the body, they did not have the right to retain any parts of it indefinitely without authorization.

125.    Plaintiff, as the deceased's next of kin, had the right to possession of the body in its entirety for burial or other lawful disposition. Defendants' continued retention and use of the body parts for their own benefit deprived Plaintiff of that right.

126.    Therefore, Defendants' unauthorized retention and use of the deceased's body parts constitutes unjust enrichment.

## Count X

### Spoliation of Evidence

***(Against All Defendants - identity of Defendant(s) in possession of Mr. Dotson's heart to be determined through a hearing)***

127.    The Plaintiffs adopt and incorporate by reference each and every allegation

contained in the preceding paragraphs of this Complaint as if fully set forth herein.

128.    Defendants performed an autopsy on the deceased and removed the heart, thereby concealing the true cause of death. By taking this action, Defendants intentionally or recklessly destroyed or altered key evidence that deprived Plaintiff of the ability to determine how the deceased died through an independent autopsy.

129.    The heart is a vital organ that would provide critical evidence in assessing the cause of death. Without the heart, Plaintiff cannot obtain an accurate and complete determination of the circumstances surrounding the deceased's death.

130.    Defendants had a duty to preserve the integrity of all body parts during the autopsy for any subsequent examinations.

131.    Their removal and retention of the heart breached this duty and prevented Plaintiff from exercising the right to conduct a full autopsy with all organs present.

132.    As a direct result of Defendants' spoliation, Plaintiff suffered damages from being unable to discover the true cause of death.

## **Count XI**

**Intentional Infliction of Emotional Distress, or Outrage**

***(Against All Defendants - identity of Defendant(s) in possession of Mr. Dotson's heart to be determined through a hearing)***

133.    Defendant's conduct in retaining the heart of the deceased and returning the body to Plaintiff in a highly decomposed state was intentional or reckless; was extreme and outrageous; and caused emotional distress so severe that no reasonable person could be expected to endure it.

134.    Defendants' conduct was so extreme in degree as to go beyond all possible bounds of decency and can only be regarded as atrocious and utterly intolerable in a civilized society.

135.    This wrongful conduct occurred in the context of a family-burial.

## COUNT XII

### SB 22 (2021) - Failure to Notify Next of Kin When Retaining Organs

*(Against All Defendants)*

136.    The Plaintiffs adopt and incorporate by reference each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

137.    Defendants violated state law by failing to provide notice to next of kin when they retained the organs of Mr. Dotson.

138.    Defendants violated state law by retaining a deceased person's entire organ for research or for any other purpose not in conjunction with a determination of identification or cause or manner of death without notification to, and approval by, the appropriate next of kin.

## COUNT XIII

### FOR INJUNCTIVE RELIEF AGAINST DEFENDANT HAMM AND DEFENDANT ANGELO DELLA MANNA IN THEIR OFFICIAL CAPACITY

*(identity of Defendant(s) in possession of Mr. Dotson's heart to be determined through a hearing)*

139.    The following Counts are brought for injunctive relief against Defendant ADOC Commissioner Hamm and Defendant ADFS Director Manna in their official capacity, pursuant to *Ex parte Young*, because they have the requisite connection with ADOC's violations of the

Dotson family's rights detailed herein, namely the authority and responsibility to stop or prevent the violations from occurring, by complying with the relief requested in Plaintiff's upcoming motion for a temporary restraining order.

140.    Defendant Commissioner Hamm Defendant and ADFS Director Manna could halt or contribute to halting the constitutional violations pleaded herein. Commissioner Hamm has the authority to oversee the handling of the remains of a deceased incarcerated individual who dies in ADOC custody and return them to Plaintiffs, as well as to instruct wardens to follow the law by requiring notification to and approval by the next of kin when organs are retained after there is a death in ADOC custody.  Defendant ADFS Director Manna has the authority to instruct ADFS medical examiners not to remove organs or tissues from a body undergoing an autopsy without permission from the next of kin.

## OTHER MATTERS

141.    All conditions precedent to the bringing of this suit have occurred.

## PRAYER FOR RELIEF

WHEREFORE, premises considered, Plaintiffs respectfully requests that this Court enter an Order:

1. Entering a judgment against Defendants;

2. Granting Plaintiffs' motion for a temporary restraining order to:

   a.  Prevent ADOC from retaining the remains of Plaintiffs' loved one Brandon Dotson, and order their return to Mr. Dotson's next of kin;

   b.  Require that all tissues or organs obtained by Defendants without consent from the patient or their family should be returned to family members, or, if not

possible, they should be cremated and interred properly;

    c.   Determine that if organs are disconnected from their records (and thus not possible to prove they were obtained with consent), they should be considered obtained without consent.

3.   Awarding damages, compensatory, punitive and disgorgement of any profits from unlawful organ or tissue retention, to Plaintiffs against Defendants in an amount deemed appropriate by a jury and authorized by law;

4.   Awarding to Plaintiffs reasonable attorney fees, costs and expenses under 42 U.S.C. §§ 1983 and 1988; and

5.   Providing such other and further relief to Plaintiffs as the Court deems just and proper.

Submitted this 7th day of December, 2023.

*/s/ Lauren Faraino*
Lauren Faraino
Attorney for Plaintiffs

**OF COUNSEL:**
Lauren Faraino (ASB-8098-C65A)
FARAINO, LLC
2647 Rocky Ridge Lane
Birmingham, AL 35216
T: 205.737.3171
E: lauren@farainollc.com

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

*/s/ Lauren Faraino*
Lauren Faraino

### VERIFICATION OF COMPLAINT

I, attorney Lauren Faraino, declare under penalty of perjury pursuant to 28 U.S.C. § 1746, that the factual allegations in the above Complaint are true and correct based on a reasonable belief supported by a reasonable investigation into the relevant witnesses and documents.

I am above the age of 18 and of sound mind, competent to make this statement. Executed on December 7th, 2023.

*/s/ Lauren Faraino*
Lauren Faraino

**NOTE TO CLERK: Please hold service on fictitious Defendants.**

**PLEASE SERVE ALL OTHER DEFENDANTS VIA CERTIFIED MAIL AS FOLLOWS:**

John Q. Hamm
Commissioner, Alabama Department of
Corrections
301 South Ripley Street
P.O. Box 301501
Montgomery, Alabama 36130-1501

Greg Lovelace
Alabama Department of Corrections
301 South Ripley Street
P.O. Box 301501
Montgomery, Alabama 36130-1501

Karen Williams
379 AL-239
Clayton, AL 36016

CHS AL, LLC d/b/a YesCare
CHSPSC, LLC
4000 Meridian Boulevard
Franklin, Tennessee, 37067

Angelo Della Manna
Director, Alabama Department Of Forensic
Sciences
1051 Wire Road
Auburn, AL 36832

University of Alabama System
Cynthia Ransburg-Brown
University Counsel
500 22nd Street South, Suite 504
Birmingham, AL 35233

University of Alabama Health Services
Foundation, P.C.
Cynthia Ransburg-Brown
University Counsel
500 22nd Street South, Suite 504
Birmingham, AL 35233

University of Alabama At Birmingham
Heersink School Of Medicine
Cynthia Ransburg-Brown
University Counsel
500 22nd Street South, Suite 504
Birmingham, AL 35233

University Of Alabama At Birmingham
Health System
Cynthia Ransburg-Brown
University Counsel
500 22nd Street South, Suite 504
Birmingham, AL 35233