FILED
2024 Jan-03  PM 03:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **AUDREY MARIE DOTSON, et al.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )   **Case No.: 2:23-cv-01657-MHH** |
| | ) |
| **ALABAMA DEPARTMENT OF CORRECTIONS, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

<u>**PLAINTIFF'S REPLY TO DEFENDANTS ADOC, ADFS, THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ALABAMA, AND THE UNIVERSITY OF ALABAMA HEALTH SERVICES FOUNDATION, P.C.'S OPPOSITION TO PLAINTIFFS' MOTION FOR EXPEDITED DISCOVERY**</u>

COME NOW Plaintiffs Audrey Marie Dotson and Audrey South (collectively, "Plaintiffs"), by and through undersigned counsel, and submit their reply to the Opposition to Plaintiffs' Motion for Expedited Discovery by ADOC and ADFS Defendants (Doc. 19) and The Board of Trustees of the University of Alabama and The University of Alabama Health Services Foundation, P.C.'s Opposition to Plaintiffs' Motion for Expedited Discovery (Doc. 20).  The

arguments against expedited discovery that Defendants present reveal a lack of understanding regarding the very basic facts at issue in this case, and the severity of the potential misconduct that Defendant(s) engaged in.  Plaintiffs brought a Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 2) not only to uncover the whereabouts of Brandon Dotson's heart – a question that the Defendants glaringly were not able to answer during the telephone conference on December 7, 2023 – but also to halt a disturbing practice of removing organs by those trusted to handle bodies during a state-ordered autopsy, without permission from the deceased or their family.  In reply to Defendants' opposition to Plaintiff's Motion for Expedited Discovery, Plaintiff states:

<strong>Statement of the Facts</strong>

Plaintiffs filed their Complaint and Motion for Temporary Restraining Order and Preliminary Injunction on December 7, 2023. Docs. 1 & 2. This Court held a telephone conference call with all parties the same day.  During that call, none of the Defendants identified the location of Brandon Dotson's heart; in fact, all claimed that they were not in possession of his heart.

On December 15, Plaintiffs filed a Motion for a Hearing on their Request for Temporary Restraining Order.  Doc. 11.  Pursuant to the Court's direction on December 18, 2023, the parties conferred and agreed they were available for an evidentiary hearing on January 5, 2023 (the "TRO Hearing").  Plaintiffs proposed

an earlier date to Defendants, before the Christmas holiday, but counsel for certain Defendants indicated they were unavailable until January 2024.  Despite Plaintiffs' wish to know the location of their loved one's heart before the Christmas holiday, Plaintiffs conceded to delaying the hearing until January 2024.  On December 21, 2023, the Court entered an order setting the TRO hearing for January 5, 2023.

The UAB Defendants filed a Motion for Summary Judgment and a brief in support of the same on December 22, 2023. Docs. 15 & 16. That motion is still pending before the Court.

On December 29, 2023, Plaintiffs filed a Motion for Expedited Discovery, seeking responses from Defendants that Plaintiffs believe will directly contribute to the efficiency of the TRO Hearing.  Doc. 17.  Plaintiffs indicated within that motion a willingness to confer with the parties regarding timing and scope of the request to take into account the practicability of responding.  *Id.*

This Court issued a text order on December 29, 2023, stating, "The defendants shall respond to the plaintiff's request for expedited discovery (Doc. [17]) by 5:00 PM on January 3, 2024."  Doc. 18.

On December 29, 2023, the ADOC and ADFS Defendants filed an opposition to the text order compelling expedited discovery.  Doc. 19.  Separately, the UAB defendants filed their own opposition to the text order.  Doc. 20.

**Argument**

This Court acted appropriately in granting Plaintiffs' Motion for Expedited Discovery.  Therefore, the order of the Court for expedited discovery should stand.

Plaintiffs and Defendants agree that a Court is empowered to grant expedited discovery before a TRO hearing based on a general "good cause" or "reasonableness" standard. *Socal Dab Tools, LLC v. Venture Technologies, LLC*, 2022 WL 19977793 at *1 (M.D. Ala. Apr. 25, 2022) (quoting *Brown v. Dunn*, 2021 WL 4523498, at *1 (M.D. Ala. Oct. 4, 2021)) (internal quotations omitted)

This means expedited discovery is allowed when the need for it outweighs the prejudice to the responding party. Good cause may be found where there is "some impelling urgency," or "hazard of loss," requiring action to be "taken forthwith." *Theni Guru Krishna Textile Mills P* v. *World's Glob. Source*, No. 1:16-CV-1482-SCJ, 2021 U.S. Dist. LEXIS 120289, at *4 (N.D. Ga. Feb. 17, 2021). The court also considers factors such as whether a motion for preliminary injunction is pending, the breadth of the requested discovery, the reasons for requesting expedited discovery and the burden on the opponent to comply with the request for discovery. *Socal*, 2022 WL 19977793 at *1 (quoting *GTO Access Sys., LLC* v. *Ghost Controls, LLC*, 2016 WL 4059706, at *4 (N.D. Fla. June 20, 2016)).

Plaintiffs contend that there are few matters that present more of an "impelling urgency" or "hazard of loss" requiring swift action than in the case of a missing organ. Organs and tissues that are not adequately preserved deteriorate

quickly. If Brandon Dotson's heart has not been illegally destroyed, it is of critical importance to confirm that it is being stored properly. Furthermore, the family has spent nearly fifty (50) agonizing days wondering where the heart of their loved one currently is. Courts in nearly all districts have recognized the heightened sensitivity of proper handling of human remains.  This case could not be a clearer example of mishandling remains of a deceased:  the evidence available to Plaintiffs indicates that Defendants removed, potentially misplaced and improperly destroyed a human heart, and now are attempting to hide the details of such activity from the family.

***Good Cause Exists to Justify Expedited Discovery.***

Specific to a determination of "good cause" for expedited discovery, in this case, the first standard is indisputably met:  there is a pending motion for preliminary injunction.  Doc. 2.

The second prong – the breadth of the discovery request – weighs in favor of the Plaintiffs.  Plaintiffs requested only sixteen (16) documents and six (6) interrogatories, each of which is necessary to conduct an efficient and expeditious hearing concerning Plaintiffs' TRO Motion, as discussed individually below.

Despite Defendants' claims that certain of Plaintiffs' discovery requests are not necessary to determine the outcome of the TRO Motion, each of these requests is tailored to answer critical questions that have direct bearing on the three forms of relief requested in Plaintiffs' Motion for Temporary Restraining Order. (*Id*.).

To satisfy the fourth and final prong of the "good cause" determination, Plaintiffs deliberately structured their request to ensure that most, if not all, requested documents are already in existence, and therefore will not be overly burdensome to produce on a short timeline.

For each of the items Defendants challenge as being overly broad or irrelevant to the determination of the TRO Motion, Plaintiffs address below why such item is tailored narrowly, necessary, and not unduly burdensome:

A. **Document detailing the chain of custody of Brandon Dotson's body from the moment he was found unresponsive at Ventress Correctional Facility ("Ventress") to Abanks Mortuary Service, including all individuals who handled or had access to his body.** This request is necessary to determine who was in possession of or had access to Brandon Dotson's body after his death. It is in the interest of all parties, and this Court, to identify expeditiously which individuals encountered Dotson's body, and therefore could have been responsible for the removal of the heart. This is a document that is or should be already in existence, and does not require any additional work on the part of the Defendants to provide to Plaintiffs.

B. **Document authorizing the autopsy of Brandon Dotson.** This document is necessary to determine whether Defendant Warden

Williams improperly provided signature approval for the entity

conducting Dotson's autopsy to take his organs. Plaintiffs are aware

through documentation provided by UAB School of Medicine

("UABSOM") students of a practice whereby UAB defendants take

organs from incarcerated individuals without approval from family

members, citing the Warden signature as sufficient to authorize the

removal and retention of the organs. **Exhibits A & B**. This practice

violates Alabama law. The practice may violate federal law,

depending on whether value is exchanged for such retained organs.

This is a document that is or should be already in existence, and does

not require any additional work on the part of the Defendants to

provide to Plaintiffs.

C. **Death Certificate of Brandon Dotson.** This document, subject to

Alabama open records laws, contains information about the

circumstances of Dotson's death, and whether an autopsy, toxicology

report, and other postmortem examinations were ordered. This is a

document that is or should be already in existence, and does not

require any additional work on the part of the Defendants to provide

to Plaintiffs.

D. **Autopsy report and/or preliminary findings on cause of death for**

**Brandon Dotson (even if such report is unfinished).**  This document is likely to detail how and why the heart was removed and taken from Dotson's body.  It will also provide information about who had direct access to Dotson's heart. This is a document that is or should be already in existence, and does not require any additional work on the part of the Defendants to provide to Plaintiffs.

E. **Video footage of the area in Ventress where Brandon Dotson was found unresponsive, and the area(s) throughout Ventress, including the infirmary, where his body was transported until he was removed from Ventress.** This camera footage is the most efficient way to determine the condition of Brandon's body when he was found deceased in his prison bed.  Plaintiff can use this footage to determine, among other facts, whether Dotson's heart was intact at the time that he was found unresponsive.  It will also show which individuals encountered Dotson's body before he was transported outside the prison.  at this time it is unclear whether his heart was removed at the prison or after, so this is essential information which will promote the efficiency of the TRO Hearing.  This is evidence that is or should be already in existence, and does not require any additional work on the part of the Defendants to provide to Plaintiffs.

F. **Documentation of any life-saving measures taken after Brandon Dotson was found unresponsive at Ventress.**  Defendants alleged that this discovery request addresses elements unrelated to the TRO Hearing.  That is incorrect.  This request is intended to show the condition of Dotson's body prior to its removal from the prison. Given the absolute lack of information that Defendants have shared with Plaintiffs, Plaintiffs have been unable to determine at what point Dotson's heart was removed from his body. Part of the essential investigation for the TRO Hearing is pinpointing exactly who removed the heart and when. This is a document that is or should be already in existence, and does not require any additional work on the part of the Defendants to provide to Plaintiffs

G. **Any investigations conducted by any member of ADOC, including but not limited to the Law Enforcement Services Division, concerning the death or aftermath of the death of Brandon Dotson.**  Defendants again alleged that this discovery request only pertains to the wrongful death charges. This is, again, incorrect. This request is meant to reveal whether Dotson's heart was intact when his body was turned over to the entity that conducted his autopsy. At present, it is impossible for Plaintiffs to determine When Dotson's

heart was removed and who was responsible for that removal. Upon

information and believe, Plaintiffs also have reason to believe that

ADOC ordered an investigation to certain YesCare employees or

others, with access to the Ventress infirmary after this lawsuit was

filed. For that reason, Plaintiffs have grounds to question whether

Dotson's body was properly cared for and handled prior to it being

turned over to the entity that conducted the autopsy. This is a

document(s) that is or should be already in existence, and does not

require any additional work on the part of the Defendants to provide

to Plaintiffs

H. **Contract(s) between the ADOC, on the one hand, and the**
**Alabama Department of Forensic Sciences ("ADFS") or any**
**entity connected with the University of Alabama (the "UAB**
**Defendants"), including but not limited to the Autopsy Division of**
**the UAB Department of Anatomic Pathology, on the other hand,**
**including but not limited to those for autopsy services.** Plaintiffs
request these contracts to determine whether ADOC has authorized
the entities that conduct autopsies after an in-custody death to remove
and/or retain organs. This document will also allow plaintiff to have a
better understanding of the relationship between the Defendants, for

the purpose of both establishing culpability and also for determining whether certain Defendants should be removed or added from the Complaint.  By granting plaintiffs access to this document, the Court will contribute to the efficiency of both the TRO Hearing and the overall lawsuit by allowing plaintiff to properly identify the relevant parties that heretofore have been shrouded in secrecy by the Defendants. This is a document that is or should be already in existence, and does not require any additional work on the part of the Defendants to provide to Plaintiffs.

I. **Contract(s) between the ADFS, on the one hand, and any entity connected with the University of Alabama (the "UAB Defendants"), including but not limited to the Autopsy Division of the UAB Department of Anatomic Pathology, on the other hand, including but not limited to those for autopsy services.**  This document(s) is requested so that Plaintiffs may be able to determine whether the UAB Defendants receive organs or tissues from the AFDS.  Plaintiffs are attaching extensive documentation of the practice of UAB defendants of removing organs from the bodies of individuals, who died in prison custody, and then using those organs as specimens for medical school student labs. **See Exhibits B, C & D**.

Plaintiffs came into possession of these documents showing that Defendants improperly relied on the Warden signature to remove and keep organs from individuals who died within ADOC custody.  It is necessary for Plaintiffs to determine whether such practice was at play in the removal and retention of Dotson's heart. To be clear, even if one of the Defendants is able to identify the location of Dotson's heart and return it to his family, as requested in plaintiff motion for a TRO, it is still necessary for Plaintiffs to determine why the heart was removed and for what purpose. Given the past behavior of UAB Defendants, it is reasonable for plaintiff to believe that Dotson's heart was removed for an improper purpose – namely, to be sent to UAB for the purpose of providing UABSOM students with a laboratory specimen to experiment on or study. This is a document that is or should be already in existence, and does not require any additional work on the part of the Defendants to provide to Plaintiffs.

J. **ADFS internal policies and procedures concerning the removal and retention of organs from a body during an autopsy.**  This document will allow Plaintiffs to determine under what circumstances Defendants believe an organ may be removed from the body of a deceased person undergoing an autopsy. This document is necessary

for Plaintiffs to have a clear view of whether these practices violate state, or potentially federal, law. This is a document that is or should be already in existence, and does not require any additional work on the part of the Defendants to provide to Plaintiffs

K. **ADFS form used for authorization of autopsy of person NOT in prison custody at time of death, and ADFS form used for authorization of autopsy of person in prison custody at time of death.** Based on documentation that Plaintiffs have concerning UAB Defendants' disparate practices concerning autopsies for those who are incarcerated at their time of death, and for those that are not, it is reasonable for Plaintiffs to seek more information about whether there is a difference in policy concerning the removal and retention of organs.  This is a document that is or should be already in existence, and does not require any additional work on the part of the Defendants to provide to Plaintiffs

L. **UAB Defendants internal policies and procedures concerning the removal and retention of organs from a body during an autopsy.** Since the filing of this Complaint, Plaintiffs have learned of an incident detailed in the Declaration of Charlene Drake, attached as **Exhibit E**. This declaration provides additional support to show that

Defendant(s) to be determined through discovery are engaged in a pattern of improperly and likely illegally taking organs from incarcerated individuals during the course of conducting an autopsy. The requested procedures will allow Plaintiffs to determine whether UAB Defendants were the intended recipient of improperly removed organs.

M. **UAB Defendants form used for authorization of autopsy of person NOT in prison custody at time of death; UAB Defendants form used for authorization of autopsy of person in prison custody at time of death.** Same as above.

N. **A list of all organs that have been removed and retained from the body of a person who died while an inmate within the ADOC, by any of the Defendants, from 2013 to present, including but not limited to the assigned number that connects a collected specimen to an individual/cadaver file.** As detailed above, since the filing of the Complaint, Plaintiffs have learned of an incident detailed in the Declaration of Charlene Drake, attached as **Exhibit E**. This declaration provides additional support to show that Defendant(s) to be determined through discovery are engaged in a pattern of improperly and likely illegally taking organs from incarcerated

individuals during the course of conducting an autopsy.  This

document is critical to fulfill the third measure sought in the motion

for TRO: freezing the practice of improperly and potentially illegally

retaining organs from autopsies without providing notice or seeking

consent from the family members of the deceased.  Plaintiffs have

documentation from prior students at UABSOM showing that the

specimens that the students encounter in the lab that originated from

incarcerated people typically are documented and connected with the

deceased body from which the specimen was taken.  *See* **Exhibit B**.

Specifically, such documentation indicates that certain organs or

specimens have been a part of the lab for such a long time that they

have become disconnected from chain of custody records. This

statement directly implies that most organs or specimens do have

documentation indicating from which body they were removed. In

order to determine whether such organs were removed in accordance

with Alabama and federal law, it is necessary to have the identity of

the deceased person from whom the specimen was obtained, so that it

can be discerned whether that person consented to being an organ

donor, or whether their family consented to donating the organs for

medical research. As **Exhibit B** shows, this is a document that is or

should be already in existence, and does not require any additional

work on the part of the Defendants to provide to Plaintiffs.

O. **Documents produced in preparation for, during or after the**
**meeting held between the ethics committee and UAB Medical**
**School students in September 2018, during which students**
**detailed their concerns about the disproportionate number of lab**
**specimens that came from individuals who were incarcerated at**
**their time of death.**  This request is made to identify which

individuals associated with the UAB Defendants were aware of the

improper, and potentially illegal, conduct of removing and retaining

organs of autopsied individuals against the wishes of the deceased or

their family. Such documents will also provide insight into the

practice that UAB Defendants are or were engaged in concerning

organ/tissue removal and retention. These are documents that are or

should be already in existence, and do not require any additional work

on the part of the Defendants to provide to Plaintiffs.

P. **Document (s) written by UAB Pathology regarding misdiagnosis**
**rates at UAB Hospital versus the ADOC, including organs from**
**incarcerated individuals.**  Plaintiff seek this document because, as

indicated in **Exhibit B**, UAB Defendants engaged in a practice of

retaining organs improperly, and then used those retained specimens

to conduct research concerning the inadequacy of medical care,

provided in prisons, and potentially benefited financially, and

otherwise, from such research, stemming from that improper organ

retention.

For each of the interrogatories, Plaintiffs detail below the reasons why the request

should be enforced by the Court:

A. **Please list the attendees at the meeting that the UAB Medical
   School students held with the UAB ethics committee in September
   2018.** This interrogatory is necessary to determine which individuals

   were put on alert that UAB's conduct concerning retention of

   incarcerated peoples organs was improper and was not done in

   accordance with the practice of obtaining consent from the deceased

   individual, via their pre-mortem decision to be an organ donor, or their

   family. Having this information will allow Plaintiffs to more

   appropriately tailor both the scope of the hearing and the relief

   requested. UAB Defendants have been put on alert that Plaintiffs

   intend to subpoena a number of individuals connected with their

   institution. Plaintiffs want to be as tailored as possible in who is an

   essential party to provide testimony. It is for the efficiency of the TRO

hearing that Plaintiffs seek this information.

1. **Please state whether ADOC was informed of the meeting that the UAB Medical School students held with the UAB ethics committee in September 2018.**  Such information promotes the efficiency of the Court, and the hearing process, as it will allow Plaintiffs to determine culpability concerning which defendants or should have known that Dotson's body was potentially going to be subjected to improper organ removal during his autopsy.

2. **Please state whether there has been a change in policies or procedures concerning the handling of a deceased person's organs or tissues during the course of an autopsy by any Defendants since July 2018.**  This request for documents that are already in existence relates to whether Defendants changed their behavior regarding retention of organs after the passage of a law in 2021 that prevented organs or tissues from being removed and retained during an autopsy without the express consent of the family, or at least without providing notice to the family. In this case, Plaintiffs were not alerted to the fact that Dotson's heart had been removed and retained. In order for Plaintiffs to properly determine what happened to Dotson's heart and at whose direction, Plaintiffs seek the document to better understand

common practice, and more specifically, whether defendants adjusted their behavior in response to a change in law.

3. **Please state which ADOC officers and YesCare employees encountered Brandon Dotson on the day of his death, both before and after he was discovered unresponsive on or around November 16, 2023.** Unless and until Defendants provide more information to Plaintiffs concerning whether Dotson's heart was removed before or after he was transported outside of the prison, it is reasonable for Plaintiffs to conduct an investigation into any individual who may have encountered Dotson's body after his death. At this stage, Plaintiffs are not asking for this information to allege misconduct outside of the removal of the heart.  This is information that is or should be already in existence, and therefore does not unduly burden Defendants to provide it.

4. **Please detail the policies and procedures used to determine whether an organ or tissue can be removed from the body of a person who dies in ADOC custody.** This question concerns the actions that Defendants may or may not have authorized.

5. Please state whether ADOC wardens believe they can authorize organ/tissue removal and retention for any purpose when an individual

dies within their custody. If so, please explain the circumstances under
which such an authorization is permitted. Please explain whether there
are any limitations to such authority. This information will allow
Plaintiffs to better understand why such unethical and potentially
illegal practices are happening so frequently, and whether Defendants
are aware of – and to what extent – their agents' activities.

***UAB Defendants' Motion for Summary Judgment is Unlikely to Be Successful.***

While the Court may consider whether a motion for summary judgment is
pending when it decides whether to grant expedited discovery, Plaintiffs note that
the UAB Defendant's Motion for Summary Judgment is improper for a number of
reasons. First, and quite notably, in their Motion for Summary Judgment, UAB
Defendants fail to even acknowledge a critical portion of the Complaint which
directly implicates them in potentially illegal activity: UAB History of Using
Specimens from Incarcerated People (Doc. 1, ¶¶ 63-72). This section of the
Complaint details activity by UAB Defendants that implicates them in a scheme of
taking and keeping organs from incarcerated individuals specifically without
permission from next of kin. Plaintiffs have shown herein and will show, when
they have an opportunity to fully respond to UAB Defendants' Motion that this
scheme is a critical fact that, as Plaintiff clearly alleges in the Complaint, indicates
that there are reasonable grounds to consider UAB Defendants as a potential

intended recipient of Dotson's heart, for academic and research purposes.  (Doc. 12, ¶ 72).  The UAB Defendants' failure to address this information means that there clearly are still issues in dispute.

Plaintiffs further contend that a public university acting as an independent contractor for the State may not be granted government immunity under certain conditions, which will be argued more fully in their forthcoming reply.

UAB Defendants further seem to suggest that Plaintiffs have made claims not supported by a reasonable inquiry into the facts alleged. Plaintiff specifically notes "UAHSF shares responsibility with ADFS in conducting autopsies when a person dies in ADOC custody." (Doc. 1, ¶ 20).

*     *     *

For the foregoing reasons, Defendants' opposition to xpedited discovery is due to be denied.

Submitted this 3rd day of January, 2024.

*/s/ Lauren Faraino*

Lauren Faraino

Attorney for Plaintiffs

**OF COUNSEL:**

Lauren Faraino (ASB-8098-C65A)

FARAINO, LLC

2647 Rocky Ridge Lane

Birmingham, AL 35216

T: 205.737.3171

E: lauren@farainollc.com

## <u>CERTIFICATE OF SERVICE</u>

I, Lauren Faraino, do hereby Certify that a true and correct copy of the foregoing has been furnished by CM/ECF on this <u>3rd</u> day of <u>January</u> 2024, to all Defendants.

<u>*/s/ Lauren Faraino*</u>

Lauren Faraino

Attorney for Plaintiffs